Sealed
Public and unofficial staff access to this instrument are prohibited by court order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
*January 26, 2023*
Nathan Ochsner, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| v. | § Criminal No. **4:23-CR-040** |
| KENT LYONS, ROQUEL TURNER, and TRAUNCE ALFRED, | § UNDER SEAL |
| Defendants. | § |

### INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse and a currently accepted medical use in treatment in the United States, or the drug had a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations:

a. Oxycodone was classified as a Schedule II controlled substance. Oxycodone was used to treat severe pain and, as with other opioids, was highly addictive. Oxycodone HCL 30mg ("oxycodone 30mg") tablets were sometimes marketed under the brand name Roxicodone, yielding the street name "Roxy," or "Roxies." The 30mg pill was the highest, short-acting pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

b. Hydrocodone was classified as a Schedule II controlled substance. Hydrocodone was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive. Tablets combining 10mg of hydrocodone bitartrate and 325mg of acetaminophen ("hydrocodone 10-325mg") was sometimes marketed under the brand name Norco. The 10-325mg pill was the highest, short-acting combination-pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

c. Hydromorphone was classified as a Schedule II controlled substance. Hydromorphone was typically prescribed for moderate-to-severe pain relief when other medication was unsuccessful. Hydromorphone, as with other opioids, was highly addictive. Hydromorphone HCL 8mg ("hydromorphone 8mg") was sometimes marketed under the brand name Dilaudid, yielding the street name "Delilah" or "Ds." The 8mg pill was the highest-strength, short-acting pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

d. "Potentiators," so-called because they enhanced the high from opioids like hydrocodone, oxycodone, and hydromorphone, included carisoprodol, a Schedule IV controlled substance classified as a muscle relaxant; alprazolam, a Schedule IV controlled substance used to treat anxiety; and promethazine with codeine, a Schedule V controlled substance classified as a cough suppressant. All had substantial street value and were in high demand on Houston's black market.

5. With exceptions not applicable here, only appropriately licensed and registered pharmacies could dispense controlled substances, and only pursuant to legitimate prescriptions filled by an appropriately licensed and registered pharmacist acting in the usual course of his professional practice. *See* 21 C.F.R. §§ 1306.04 and 1306.06.

**DEFENDANTS, RELEVANT INDIVIDUALS, AND ENTITIES**

6. K Med Pharmacy, located at 11900 Barryknoll Lane in Houston, Texas ("KMED") was a "front" pharmacy used to purchase large quantities of oxycodone, hydrocodone, hydromorphone, and the Potentiators alprazolam, carisoprodol, and promethazine with codeine, which were illegally dispensed without prescriptions, in bulk, onto the black market. Defendants operated Nex Gen Pharmacy, located at 9769 Beechnut Street, Houston, Texas ("NEX GEN") for similar purposes.

7. Defendant **KENT LYONS** controlled KMED and NEX GEN through his co-conspirators, though his name appeared nowhere on the pharmacies' corporate records.

8. Defendant **ROQUEL TURNER** was the paper owner of KMED.

9. Defendant **TRAUNCE ALFRED** was a drug trafficker that illegally bought bulk quantities of oxycodone, hydrocodone, hydromorphone, and other controlled substances from **KENT LYONS** and his co-conspirators.

10. Pharmacy Technicians A, B, and C performed roughly the same role within the conspiracy, each while they were romantically involved with Defendant **KENT LYONS**. Their roles included some of the functions of a pharmacy technician; ordering and receiving KMED and/or NEX GEN's controlled substances from wholesalers; delivering the controlled substances to locations controlled by Defendant **KENT LYONS**; and depositing into accounts controlled by Defendants **KENT LYONS** and **ROQUEL TURNER** cash proceeds derived from the illegal sale of controlled substances.

11. KMED and NEX GEN purchased the controlled substances they illegally sold from several wholesalers. One of these, Wholesaler A, sold controlled substances to KMED through Broker A, an independent sales representative for Wholesaler A and other wholesalers.

12. Collectively, Defendants **KENT LYONS** and **ROQUEL TURNER** and their drug trafficking co-conspirators are the "LYONS Drug Trafficking Organization" or "LYONS DTO."

13. Pharmacist A was the Pharmacist-in-Charge ("PIC") at KMED and NEX GEN.

14. Co-conspirators A and B helped Defendant **KENT LYONS** launder his ill-gotten gains, including through the purchase and sale of real estate.

## COUNT ONE
### Conspiracy to Unlawfully Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

15. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

16. From in or around August 2017, and continuing through in or around September 2022, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**KENT LYONS**,
**ROQUEL TURNER, and**
**TRAUNCE ALFRED**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), that is, to knowingly, intentionally, and unlawfully distribute and to possess with the intent to distribute mixtures and substances containing a

4

detectable amount of controlled substances, including hydrocodone, oxycodone, and hydromorphone, each a Schedule II controlled substance; alprazolam, carisoprodol, promethazine with codeine, controlled substances in Schedules IV and V; and other controlled substances.

## Purpose of the Conspiracy

17. It was the purpose of the conspiracy for Defendants **KENT LYONS** and **ROQUEL TURNER**, other members of the LYONS DTO, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by, among other things: (a) trafficking in controlled substances, including hydrocodone, oxycodone, hydromorphone, alprazolam, carisoprodol, and promethazine with codeine, that Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO distributed and caused to be distributed, and possessed with the intent to distribute and caused to be possessed with the intent to distribute; (b) generating large profits from trafficking in controlled substances; and (c) diverting the proceeds from sales of those controlled substances for the personal use and benefit of Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO.

## Manner and Means of the Conspiracy

The manner and means by which Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO sought to accomplish the purpose and object of the conspiracy included, among other things:

18. Defendants **KENT LYONS** and **ROQUEL TURNER** maintained Texas Pharmacy Licenses from the Texas State Board of Pharmacy ("TSBP") and registrations from the U.S. Drug Enforcement Administration ("DEA Registrations") for KMED and NEXGEN, and

they employed a licensed pharmacist, Pharmacist A, so that they could hold KMED and NEXGEN out to TSBP and others as legitimate pharmacies.

19. Pharmacy Technicians A, B, and C performed certain day-to-day operations for Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO, including:

   a. Placing orders on behalf of KMED and other pharmacies, including NEXGEN, controlled by Defendant **KENT LYONS** and other members of the LYONS DTO, with wholesalers and their representatives, including Broker A as a representative of Wholesaler A, for controlled substances like hydrocodone, oxycodone, hydromorphone, alprazolam, carisoprodol, and promethazine with codeine;

   b. receiving and causing to be received deliveries of controlled substances, which were often placed directly into the trunk of their or another LYONS DTO member's vehicle to be diverted, instead of being brought into KMED and NEXGEN;

   c. delivering and causing to be delivered controlled substances to locations controlled by Defendant **KENT LYONS** and other members of the LYONS DTO, including LYONS' residences located in Houston, Texas (the "LYONS HIGH RISE") and in Missouri City, Texas (the "WHITE HOUSE") for purposes of diversion; and

   d. depositing cash proceeds from the LYONS DTO's illegal sales of these controlled substances into accounts controlled by Defendants **KENT LYONS** and **ROQUEL TURNER**.

20. Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO knew and intended that the controlled substances ordered from wholesalers, including Wholesaler A, on behalf of KMED and other pharmacies operated by the LYONS DTO,

would be illegally distributed for cash, often in bulk and without the involvement of physicians, patients, or prescriptions, and without any legitimate medical purpose, to drug traffickers like **TRAUNCE ALFRED**, and ultimately, onto the black market.

21. Pharmacist A neither dispensed nor reported dispensing these drugs to TSBP's prescription monitoring program ("PMP") database, into which pharmacists are required by law to submit prescription information including the patient's name and physician, within 24 hours of dispensing any controlled substance.

22. Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO maintained the physical premises at KMED, and the other pharmacies the LYONS DTO controlled like NEXGEN, not for the purpose of conducting legitimate pharmacy business, but only as a front to illegally distribute controlled substances to drug traffickers like Defendant **TRAUNCE ALFRED**, while avoiding detection by law enforcement.

23. KMED, which was located inside an assisted-living facility, had virtually no foot traffic into or out of the pharmacy, had few legitimate patients and filled few legitimate prescriptions.

24. Yet, data reported to DEA by Wholesaler A and other wholesalers reflect that, from in or around September 2019 through in or around July 2022 alone, Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO, through KMED, purchased and caused to be purchased at least approximately 965,000 combined hydrocodone 10-325mg, oxycodone 30mg, and hydromorphone 8mg pills, substantially all of which were illegally distributed to drug traffickers like Defendant **TRAUNCE ALFRED**, and ultimately, onto the black market.

25. Defendants **KENT LYONS** and **ROQUEL TURNER** and other members of the LYONS DTO split and often laundered the proceeds from the illegal cash sales of the controlled substances acquired through KMED and other pharmacies controlled by the LYONS DTO.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO AND THREE
### Unlawfully Possessing with the Intent to Distribute, and Distributing, Controlled Substances
### (21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2)

26. Paragraphs 1 through 14 and 18 through 25 are re-alleged and incorporated by reference as though fully set forth herein.

27. On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**KENT LYONS and
TRAUNCE ALFRED**

aiding and abetting and aided and abetted by each other, and others, did knowingly, intentionally, and unlawfully distribute, and possess with the intent to distribute, and cause to possess with the intent to distribute, the controlled substances alleged below:

| Count | Medications Involved | Drug Schedule | Approx. Amount | Approx. Date |
|---|---|---|---|---|
| 2 | Oxycodone 30mg | II | 3,900 pills | July 16, 2020 |
| | Hydromorphone 8mg | II | 1,000 pills | |
| | Promethazine with codeine | V | 96 pints | |
| 3 | Hydromorphone 8mg | II | 700 pills | October 1, 2020 |
| | Oxycodone 30mg | II | 400 pills | |

Each in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT FOUR
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h))

28. Paragraphs 1 through 14 and 18 through 25 are re-alleged and incorporated by reference as though fully set forth herein.

29. From in or around January 2018, and continuing through in or around May 2022, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**KENT LYONS and
ROQUEL TURNER**

did knowingly combine, conspire, and agree with each other, and with other persons known and unknown to the Grand Jury, including Co-conspirator A and Co-conspirator B, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 846, and Unlawfully Distributing and Possessing with the Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), knowing that the transactions were designed in whole and in part to: (a) conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and (b) avoid a transaction reporting requirement under Federal law, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the

financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

### Manner and Means of the Conspiracy

The manner and means by which Defendants **KENT LYONS** and **ROQUEL TURNER,** Co-conspirator A, Co-conspirator B, and their co-conspirators, known and unknown to the Grand Jury, sought to accomplish the purpose and object of the conspiracy included, among other things:

30. Defendants **KENT LYONS** and **ROQUEL TURNER** and their co-conspirators controlled bank accounts at different financial institutions that were used to "layer" proceeds from their illegal distribution of oxycodone, hydrocodone, and other controlled substances, by transferring the proceeds from the criminal activity from bank account to bank account in order to obscure the origin of the proceeds and evade law enforcement detection.

31. Defendants **KENT LYONS** and **ROQUEL TURNER** and their co-conspirators made numerous cash deposits into accounts they and their co-conspirators controlled of proceeds from the criminal activity in increments of less than $10,000, "structuring" these deposits at different banks and/or branches, sometimes on the same day, to avoid the requirement that banks report currency transactions over $10,000 to the U.S. Department of the Treasury, as is illustrated in the table below pertaining to Counts 9 through 14.

32. Defendants **KENT LYONS** and **ROQUEL TURNER,** Co-conspirator A, Co-conspirator B, and their co-conspirators conducted cash transactions in real estate and luxury items to "wash" cash that Defendants **KENT LYONS, ROQUEL TURNER,** and other members of the LYONS DTO made off the illegal distribution of hydrocodone, oxycodone, and other controlled substances. These transactions included:

a. The WHITE HOUSE, conveyed by one of Co-conspirator A's entities, as Grantor, to one of Defendant **KENT LYONS'** entities, as Grantee, as reflected in a General Warranty Deed, dated April 9, 2020, filed on June 25, 2020, and signed by Co-conspirator A and Defendant **KENT LYONS,** with Defendant **ROQUEL TURNER** serving as notary; and

b. The SEABREEZE PROPERTY, conveyed by one of Co-conspirator A's entities, as Grantor, to one of Defendant **KENT LYONS'** entities, as Grantee, as reflected in a General Warranty Deed, dated November 20, 2020, notarized by Defendant **ROQUEL TURNER** March 15, 2021, and filed on or about March 18, 2021. On or about March 16, 2022, a General Warranty Deed signed by Defendant **KENT LYONS** reflects sale of the SEABREEZE PROPERTY by one of Defendant **KENT LYONS'** entities, as Grantor, to an affiliate of one of Co-conspirator A's pharmaceutical drug trafficking co-conspirators, as Grantee. The Purchase Contract reflects that Co-conspirator B served as Defendant **KENT LYONS'** real estate agent for the transaction;

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS FIVE AND SIX
**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity
(18 U.S.C. § 1957 and 18 U.S.C. § 2)**

33. Paragraphs 1 through 14, 18 through 25, and 30 through 32 are re-alleged and incorporated by reference as though fully set forth herein.

34. On or about the dates set forth below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants **KENT LYONS** and **ROQUEL TURNER,** as specified below, aiding and abetting and aided and abetted by each other and others, did knowingly

11

engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, Conspiracy to Distribute and Dispense Controlled Substances, in violation of Title 21, United States Code, Section 846, and Unlawfully Distributing and Possessing with the Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), as follows:

| Count | Defendant | Originating Bank Account | On or About Date | Approx. Amount | Description |
|---|---|---|---|---|---|
| 5 | **KENT LYONS** and **ROQUEL TURNER** | JP Morgan Chase Bank - CHASE K MED account | January 4, 2021 | $44,340 | Cashier's Check for pool installation at the WHITE HOUSE |
| 6 | **KENT LYONS** | N/A | December 9, 2021 | $107,028 | Cash Payment for Ford F-250 Truck |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS SEVEN and EIGHT
### Concealment Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2)

35. Paragraphs 1 through 14, 18 through 25, 30 through 32, and 34 are re-alleged and incorporated by reference as though fully set forth herein.

36. On or about the dates set forth below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant

**KENT LYONS**

aiding and abetting and aided and abetting by others, known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign

commerce, which involved the proceeds of a specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Unlawfully Distributing and Possessing with the Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as follows:

| Count | Bank Account | In or Around Date/Time | Approx. Amount | Description |
|---|---|---|---|---|
| 7 | NA | May 4, 2021 | $114,484.11 | Cash Payment to purchase Mercedes Maybach |
| 8 | NA | December 21, 2021 | $100,269.64 | Cash Payment to purchase Rolls Royce |

In violation of Title 18 United States Code, Sections 1956(a)(1)(B)(i) and 2.

**COUNTS NINE THROUGH FOURTEEN**
**Engaging in Monetary Transactions to Conceal and Evade Reporting Requirements**
**(18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(1)(B)(ii) and 18 U.S.C. § 2)**

37. Paragraphs 1 through 14, 18 through 25, 30 through 32, and 34 are re-alleged and incorporated by reference as though fully set forth herein.

38. On or about the dates set forth below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant

**KENT LYONS**

13

aiding and abetting and aided and abetting by others, known and unknown to the Grand Jury, including Pharmacy Technicians A, B, and C, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Unlawfully Distributing and Possessing with the Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and to avoid a transaction reporting requirement under federal law, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as follows:

| Count | Bank Account | In or Around Date/Time | Approx. Amount | Description |
|---|---|---|---|---|
| 9 | Chase KMED X0051 | June 26, 2018, at an unknown time | $9,980.00 | Cash deposit made by Pharmacy Technician A |
| 10 | BofA KMED X4624 | June 26, 2018, at 9:16am | $5,000 | Cash deposit made by Pharmacy Technician A |
| 11 | BofA KMED X4624 | November 10, 2020, at 9:04am | $6,000 | Cash deposit made by Pharmacy Technician B |
| 12 | Chase KMED X0051 | November 10, 2020, later in the day | $9,000 | Cash deposit made by Pharmacy Technician B |

| 13 | PNC KMED X7312 (formerly BBVA X4025) | August 27, 2021, 9:07am | $3,960 | Cash deposit made by Pharmacy Technician C |
| --- | --- | --- | --- | --- |
| 14 | BofA KMED X4624 | August 27, 2021, 9:17am | $9,000 | Cash deposit made by Pharmacy Technician C |

Each in violation of Title 18 United States Code, Sections 1956(a)(1)(B)(i), 1956(a)(1)(B)(ii) and 2.

## NOTICE OF CRIMINAL FORFEITURE
## (21 U.S.C. § 853)

39. The allegations contained in Counts 1, 2, and 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

40. Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841 and/or 846, Defendants

**KENT LYONS,**
**ROQUEL TURNER, and**
**TRAUNCE ALFRED**

shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, and intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

a. Bank of America, Account No. 488091104579 in the name of LYONS PROPERTY DEVELOPMENT, LLC.

15

    b. Bank of America, Account No. 488109310284 in the name of LYONS PROPERTY DEVELOPMENT, LLC.

    c. Bank of America, Account No. 488060629454 in the name of KENT LYONS.

    d. PNC Bank, Account No. 4954434633 in the name of KENT LYONS.

    e. Bank of America, Account No. 488073336705 in the name of KUNIVERSAL CONSULTING LLC.

    f. Bank of America, Account No. 488073336718 in the name of KUNIVERSAL CONSULTING LLC.

REAL PROPERTY

    a. 2229 Waterford Village Blvd., Missouri City Texas 77459

    b. 2607 NightSong Drive, Pearland, Texas 77584

    c. 3700 83rd Street, Unit 25, Galveston, Texas 77554

    d. 6920 Lasker Drive, Galveston, Texas 77551

VEHICLES

    a. 2014 Rolls Royce Wraith, Vehicle Identification Number SCA665C53EUX84422

    b. 2019 Range Rover Sport, Vehicle Identification Number SALWZ2SE2KA830361

    c. 2010 Bentley Continental, Vehicle Identification Number SCBCP7ZAXAC063087

    d. 2019 Ford F-250, Vehicle Identification Number 1FT7W2BT2KEF32064

    e. 2014 Mercedes Benz G550, Vehicle Identification Number WDCYC3HF2EX218292

41. If any of the property described above, as a result of any act or omission of defendant[s]:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to a money judgment and forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(1))

42. The allegations contained in Counts 4 through 14 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

43. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and/or 1957, Defendants **KENT LYONS** and **ROQUEL TURNER** shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

    a. Bank of America, Account No. 488091104579 in the name of LYONS PROPERTY DEVELOPMENT, LLC.

    b. Bank of America, Account No. 488109310284 in the name of LYONS PROPERTY DEVELOPMENT, LLC.

    c. Bank of America, Account No. 488060629454 in the name of KENT LYONS.

    d. PNC Bank, Account No. 4954434633 in the name of KENT LYONS.

    e. Bank of America, Account No. 488073336705 in the name of KUNIVERSAL CONSULTING LLC.

    f. Bank of America, Account No. 488073336718 in the name of KUNIVERSAL CONSULTING LLC.

REAL PROPERTY

    a. 2229 Waterford Village Blvd., Missouri City Texas 77459.

    b. 2607 NightSong Drive, Pearland, Texas 77584.

    c. 3700 83rd Street, Unit 25, Galveston, Texas 77554.

    d. 6920 Lasker Drive, Galveston, Texas 77551.

VEHICLES

    a. 2014 Rolls Royce Wraith, Vehicle Identification Number SCA665C53EUX84422

    b. 2019 Range Rover Sport, Vehicle Identification Number SALWZ2SE2KA830361

    c. 2010 Bentley Continental, Vehicle Identification Number SCBCP7ZAXAC063087

    d. 2019 Ford F-250, Vehicle Identification Number 1FT7W2BT2KEF32064

    e. 2014 Mercedes Benz G550, Vehicle Identification Number WDCYC3HF2EX218292

*Continued on next page...*

44. If any of the property described above, as a result of any act or omission of defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to a money judgment and forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

**Original Signature on File**

FOREPERSON

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Drew Pennebaker*
DREW PENNEBAKER
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE